I think both parties have laid out their arguments fairly well in this case. I'm here just to emphasize a few points. This case is governed by some very fundamental issues of contract law. The most basic rule is the principle that when construing the language of an insurance policy our courts must assume that every provision was intended to serve a purpose. Now the anti-stacking provision in the State Farm policy has been upheld in numerous appellate court and even Supreme Court decisions. The provision clearly and unambiguously prohibits stacking of coverages. Appellate contends that this court should nullify that position, take it completely out of the policy based on his interpretation of the declaration sheet standing alone. And I think that's an important point that I'll be getting to in a moment. The declaration sheet has a column titled Annual. And its sole purpose is to provide the premiums, the annual premiums, for each specific type of coverage in a multi-vehicle policy. But that shows the amount besides the premium. It does. It shows the annual. It shows it identifies the annual premium for each type of coverage. And the amount of coverage. Well, it says $58.95 pertains to W, which is the underinsured coverage at issue in this case. It doesn't have like 200, 300 or whatever? No, it does not. Also, it just says the amount of charge? It shows the annual. It says annual is the title of the column. And it shows a code or premium for that coverage. Where does it show a W is equal to? It shows a W like under D. It shows a number of letters, each one corresponding to a different type of coverage. And in the column marked Annual, it will identify the vehicle. And then it identifies which coverages are available. And then it identifies which type of coverage by a symbol, in this case W, for underinsured motorist coverage. And then it shows the annual premium, in this case $58.95. How would anybody know if they got $100, $300, $200, $500? You turn to the first page of the declaration sheet, and it shows that the... That's what I'm talking about, the first page of the deck sheet. Right. That's correct, Your Honor. It's got the amounts on it. It has liability amounts. It shows the amounts of coverage. I believe it's $250,000 per person, $500,000 per accident. Okay, that's what I'm getting at. Right. But those amounts are not shown next to each vehicle. And that's a key consideration because the courts have found that where the policy limits are shown only once, those policy limits cannot be stacked. And that's been upheld in a number of decisions, in the Bruder decision and in Hobbs. And that's a key point here. The policy limits are only shown one time in the entire declaration sheet. Now, plaintiff suggests that when we look at the key, and it should really define what W stands for as underinsured motorist policy, that we should also incorporate the amount of coverage. And at least we put that amount of coverage in every single column, next to every vehicle, under the column that's designed merely to show the annual premium, in this case $58.95, he says that we should incorporate the policy limits in there as well. Now, the Hobbs decision addressed this. In that case, it said they doubled the policy. And here's what it said on the declaration sheet. It said, if a premium is shown, coverage is offered. Well, that's very similar to what's being argued here. The court rejected that notion. It said that the mere fact that a premium is shown and that that provides coverage does not incorporate the policy limits. And it pointed out that it doesn't directly attack, it doesn't directly contradict the anti-stacking provision. Therefore, in Hobbs, it disallowed stacking of the policy limits. Now, the problem with Plaintiff's argument is that it suffers from a number of flaws here. First of all, the declaration sheet is just one part of the policy and must be looked at in conjunction with the anti-stacking provision. Now, the Hobbs decision made clear that the declaration sheet cannot address every conceivable coverage issue. The court explained that when the declaration sheet is read in isolation, yes, some uncertainty might arise, that that uncertainty can be resolved merely by looking at the anti-stacking provision. In other words, the policy must be read as a whole. You can't just take the declaration sheet standing alone and find ambiguity. This court, in the Sherrod decision, agreed with that principle. And it said, and this is a quote, when determining whether ambiguity exists, the court must read the provisions of an insurance contract together and not in isolation. Now, that's precisely what Plaintiff is doing in this case. Another central taboo... How does this case differ from our opinion in progressive premier insurance versus coach? In the coach decision, the policy limits were actually literally shown next to each vehicle. And the same is true, I believe, in the decisions of the elephant insurance, it's all I can remember about it. You actually look at the multi-vehicle declaration sheet and sure enough, it shows the actual policy limits next to each vehicle. But this one doesn't show that. Pardon me? What Justice Walsh, I think, was trying to get at is that on this deck sheet, there are no individual limits shown, just the premium amount. Is that right? That's correct. On the first page, though, of the declaration sheet... But isn't, in the coacher case, I call it coacher, it's K-O-C-H-E-R, and it's our 5th District case at 402 LF 3756. As you say, the premiums were actually, or the amount of coverage was actually shown, right? That's correct. And the court there found an ambiguity, or we found an ambiguity, didn't we? Yeah, and I agree. So how is your case different when you don't even have the limits allowed? Had we put on the declaration sheet, next to each vehicle, W, which means under insurance coverage, and then listed the policy limits next to each vehicle, then we might have a problem there, might have a problem. That's what I'm trying to decide, is how is it different with you not even putting that in and only limiting it to the amount of premium? I think that's what Justice Walsh was asking. There's no way to know what the coverage is, the max. The policy limits are shown on the very first page of the declaration sheet, and it states that the under-insured limits are $250,000-$500,000. Right, but it doesn't say for each car. No, it does not. It doesn't limit it to each car. And when you read the anti-stacking provision, it says that these are the most we will pay, no matter how many insurance or vehicles insured. But isn't that the ambiguity, is when you say this is the most, we don't know what is the most? You see what I'm saying? Well, the limit is $250,000 per person, $500,000 per accident. Well, where do we get that? On the very first page of the declaration sheet. But that is the issue, is that it's a generic, this is the limits, but then we don't say it per car, right? Or am I wrong about that? I could be. Well, I would suggest that that would be unnecessary, because when you read the anti-stacking provision, it states it doesn't matter how many cars are insured, this is the policy limit. Does it say no matter how many cars are insured? It says, absolutely, it says no matter how many insureds, no matter how many insured vehicles, this is the limit. And it's only stated once, and that's on the first page of the declaration sheet. It says, regardless of the number of insureds, claims made, vehicles insured, or vehicles involved in the accident. That's correct, Your Honor. Okay. Now, this entire case derives from a decision, actually it's dicta in the policy limits next to each vehicle. Well, it wouldn't be too hard to find an ambiguity, maybe those policy limits could be stacked. Twelve years later, the Hobbs decision comes out, and the Hobbs decision made it clear, it said, Bruner did not establish a per se rule. Bruner did not say, if you do this every time, there is an ambiguity and you can stack coverage. Bruner made it clear, Hobbs made it clear, that an insurance policy will not be deemed ambiguous any time the limits of liability are noted more than once on the declaration sheet. Now, what that means is this, is that even if this court presumes that the policy limits were listed next to each vehicle on the declaration sheet, that doesn't end the inquiry. In the end, this court must still determine whether or not the plaintiff's interpretation of the policy is reasonable. And I believe the phrase that the court uses is that reasonableness is the touchstone. And that's what we're dealing with here. There is nothing on the declaration sheet that suggests at anywhere that the policy limits should be, can be multiplied. To the contrary, it just lists that the policy limits are listed once and only once on the first page of the declaration sheet. There is nothing, and in terms of where the W is placed, which denotes under insured motorist coverage, which is at issue in this case, that W is placed under a column marked annual, meaning annual premiums. It's designed just to tell you how much it costs you per year or whatever the term of the insurance contract is. There's nothing in this policy that suggests that those policy limits can be multiplied, can be stacked. And to the extent that any confusion or any uncertainty arises, again, the most fundamental policy principle underlying insurance contracts is that you must look at the policy as a whole. And this is where Hogg's quote concluded. It said, to the extent that you have any confusion, that confusion is resolved by looking at the policy as a whole, specifically the anti-stacking provision. That's all I have. If you have any questions. I don't believe we do. Thank you. Thank you. Counsel? Counsel? Thank you. You're welcome to take that up to the boardroom if you'd like. That would knock it over. I've done that. Good morning. May it please the clerk? Counsel? My name is Bill Alexander, and I represent Mr. Barlow. We're here because Mr. Barlow was injured while at work. He received workers' compensation benefits. This employer has this policy that we're talking about. State Farm claims the policy limits are $250,000, and the workers' comp far exceeds the $250,000 without stacking. My client apparently would get nothing from this underinsured policy. Let me first of all make a statement as to what counsel referred to on State Farm policies in general. I am the person in our office that reviews most of the policies that come in, and so it's been my finding that State Farm policies in general don't stack. And the reason is the ones that come across my desk or have until this one, they're all noncommercial policies. And State Farm has their own internal policy that they issue separate policies for each vehicle. And the courts have consistently found that because of those separate policies, there's no stacking. This is different. When I first saw this, I looked at the declaration pages. And, you know, I don't know if you have them in front of you. I'd be happy to put them in front of you and copy if you need it or whatever. But I looked at this, and this is like no declaration page that I've experienced. The ones I see come across the desk, they have a bunch of information on them. One thing they will say is declaration page. This doesn't even say that. There are three pages to it. The first page has A, U, W with words by it, plus some information at the top about the owner of the policy. The next two pages have eight vehicles on each one. And it has a column with letters and numbers. We have been assured by State Farm that these are the declaration pages. I will say I find the word limits nowhere on these declaration pages. It's just absent. I don't know, you know, that it has identified limits. Where is it? When I sat down and looked at this, I was confused by what they were trying to say. After studying it, and I'm not expounding on my ability here, but just the way I went about looking at this, I finally figured out the one thing they could be saying is what appears on the first page is a legend. They have A standing for liability, and then it has bodily injury with amounts. They have U standing for uninsured, and they have W for underinsured. And if, in fact, I'm correct and that's a legend, then you take the representation, which they say is a symbol, but it doesn't say it on the declaration page. But the symbol of W, if it's a legend, you take and you insert the language after the W into the rest of the declaration pages. And then if I read that correctly, that means that for each vehicle, you have bodily injury, 250, each person 500, and a premium, which, as I understand, is a standard that Hobbs set forth. If the premium and the limits are set there, if these are limits, which is the only thing I guess we can conclude, then effectively they have stated the conditions set forth in Hobbs, followed by this court in Johnson and Kosher. And I call it progressive, but Kosher. And a charity this year, Justice Welch, it was just extremely mind-boggling for a while when I looked at this. And then when I looked further, counsel says that we have to not only consider the declaration pages, but we have to consider the policy itself. And both of us have set forth these portions of the policy in our briefs, but they're also in the supplemental record. One of the things this policy says is this policy provides uninsured motor vehicle coverage for bodily injury if W is shown under symbols on the declarations page. Again, I can only assume that they mean the first page where the W appears, because the word symbols doesn't appear on those declarations. It goes further, and under limits, it says the uninsured motor vehicle coverage limits are shown on the declarations page under uninsured motor vehicle coverage bodily injury limits each person, each accident. You notice that in the policy it says limits, but nowhere on that declaration page do I see the word limits. What about the provision that counsel cited where he says that the stacking language itself is a limit? Is a limit? Yes, where he cited the language the most we will pay regardless of the number of insured claims made, vehicles insured. What about that language, vehicles insured? How do you distinguish that? How do I distinguish it? I mean, how do you say that that's ambiguous as opposed to valid anti-stacking language? Excuse me. As I understand the cases that this court has decided in the follow-up to Hobbs, there has been language very similar to that language, and the question then becomes if the declarations pages can be interpreted differently, then it creates an ambiguity, and therefore the ambiguity has to be found in favor of, in this case, Mr. Varla. And you're right, but in my reading of these cases regarding stacking, a lot of, at least a lot of them, and even this case focused on paragraph A of the anti-stacking language where they say the insureds, the number of insureds. Correct. None of them, at least that I've read, focus on the number of vehicles insured, which is paragraph C. The most we will pay regardless of the number of vehicles insured, they don't focus on that language or vehicles involved in the accident, those C and D. Have you found any cases that focus on that portion of the provision as opposed to the other? I have personally not, and the cases I read don't focus on that. Do not focus on that. Do not, correct. Right, I agree. I didn't find any either. Yes. So I'm wondering why that might be, actually. I'm sorry, I apologize. I'm wondering why that might be because it seems that State Farm could simply argue that it has nothing to do with the insurers but has something to do with the vehicles insured. They are. So even if that language were involved in this case, how would you respond that there's ambiguity there? And I still go back. I state there is language in the policy that can be considered anti-stacking in this case. If the declaration pages, however, can be interpreted differently, then we create an ambiguity, and the ambiguity must be found in favor of Mr. Barlow. I believe the cases are consistent on that. And your argument on ambiguity is that preliminary legend, if you would say it. Correct. Characterize it. My point is, is that whenever you look at each vehicle, all the language under W has to be inserted. It's just, you know, I'm old enough that I used to have road atlases, and there would be a legend in them. You're laughing. I'm glad you do. I think everybody's sitting here. I searched the office yesterday for a road atlas and there was not one. But the legends on the road atlas are symbols, and whenever you look at the map, you have to insert what it stands for at that point. And it's the same thing here. If they would have put any language on the declarations pages that indicates that there is no stacking, they would be home here. But I believe that they have failed. I mean, to me, these declaration pages are poorly conceived and written. But we have to deal with them as they are. I guess maybe I'm saying they should hire me to write their next book. But, no, one of the things that always bothers me when I'm looking at an insurance policy is how do I look at it? And I work with them so much, as does Defense Counsel. The first thing we do when we look at it is have an impulse to say this is what they say, but not always true. And the Illinois Supreme Court in Gillen, which I've cited in my brief, says that we have to look at this as a reasonable, ordinary person. And when a reasonable, ordinary person looks at these declaration pages, it's my belief that they would be saying, my goodness, there's $250,000 of underinsured dollars on the first vehicle, on the second vehicle, third vehicle, because they have to read what the legend says when they look at the premiums. That's the conclusion I came to, and that's why I filed the complaint in this case. I agree that we have to take the policy as a whole, but when the ambiguity exists, then it's in favor of my client, Mr. Barlow. And I point out again, nowhere on the declaration pages does the word limits appear. To me, that's just foreign. I've never seen a declaration page like that before. That's all I have, unless you have anything further. I don't believe there are. Thank you, Counsel. Counsel? Thank you. Pardon me. Thank you. I just have a few brief comments. Counsel mentioned that, well, he looked at these policy provisions, and he said, well, if people can interpret them differently, well, then it's ambiguous. And that's actually not the standard that the court should be working with. A policy provision, and this comes from the Supreme Court decision and the Rich decision, he said, a policy provision is not rendered ambiguous merely because parties disagree as to its meaning. And that's very important here. Reasonableness is the key. So counsel is suggesting that we read policy limits of $250,000-$500,000 into a column titled annual, which is designed solely to ensure the amount of the annual premiums. And we submit that that's unreasonable. So the mere fact that he disagrees with we disagree as to how this should be read isn't enough. You have to look at what is reasonable. And we submit that it is unreasonable to look at a column designed solely to provide information as to the cost of the annual premiums and to read into that column the limits of liability. Now, there's another quote I would like to make from the Hobbs decision. They point out that any provision in a lengthy document is bound to be ambiguous in the sense that it creates questions that can only be answered by reference to other portions of the document. And that's what we have here. To the extent that any uncertainty arises, all you have to do is look at the policy as a whole, look to the anti-staffing provision, and that will provide, that will clarify what is at issue here. Finally, the basic principle is this, is that when determining whether an ambiguity exists, the court must read the provisions of an insurance contract together and not in isolation. That comes from this Court's decision and the Sherrod decision. Thank you very much. We ask that you reverse the trial court's order granting summary judgment. Thank you. Thank you, Counsel. We appreciate the briefs and arguments. Counsel will take the case under advisement.